IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THE JOINT COMMISSION ON ACCREDITATION OF HEALTHCARE ORGANIZATIONS, and JOINT COMMISSION RESOURCES, INC., | )<br>)<br>) Case No. 1:14-cv-10225<br>)<br>) Judge John J. Tharp |
| Plaintiffs, | )<br>) JURY TRIAL DEMANDED |
| v. | ) |
| THE GREELEY COMPANY, INC. and FORTIS BUSINESS MEDIA LLC d/b/a BLR – BUSINESS & LEGAL RESOURCES, | )<br>)<br>)<br>) |
| Defendants. | ) |

**PLAINTIFFS' OPPOSITION TO GREELEY COMPANY, INC.'S
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

**I.    SUMMARY**

Plaintiffs' Second Amended Complaint identifies the Plaintiffs' two protected works at issue, identifies the six publications that reflect Greeley's copying, includes examples – by specific page – demonstrating some of Greeley's copying, and alleges the Greeley had access to, and in fact copied, Plaintiffs' works. Nevertheless, Greeley asks the Court to find that Greeley is not on fair notice of Plaintiffs' infringement claim. Plaintiffs have pled more than enough to put Greeley on notice of their claim.

Greeley also asks the Court to dismiss Plaintiff Joint Commission Resources, Inc. ("JCR") from this case because JCR did not author the two works at issue. But JCR is an exclusive licensee under certain rights in those works. As an exclusive licensee, JCR can bring suit.

Greeley also ask the Court to dismiss Plaintiffs' claim for one of the works that has not yet been registered with the U.S. Copyright Office. To do so, the Court would have to ignore the most recent cases out of this District finding that a copyright application is, by itself, enough to support an infringement claim.

Last, Greeley asks the Court to dismiss part of Plaintiffs' claim by making findings on the merits that first, Greeley has not copied enough of Plaintiffs' work and second, that the portion that Greeley copied "is not of any greater importance" than the remaining portion of the work. However, Greeley's request is based on the premise that the *examples* of Greeley's copying listed Plaintiffs' Second Amended Complaint reflects the *entirety* of Greeley's copying. That is incorrect both under the express allegations of Plaintiffs' Complaint and under the law, which does not require an itemization of each instance of infringement at the pleading stage. Without that premise, Greeley's request for a merits-based ruling on a barren record must be denied.

## II. JCR Has Exclusive Rights Under the Copyrights at Issue and, Therefore, Can Sue for Greeley's Infringement of Those Rights

The Joint Commission is the author of, and therefore owns, the two works at issue. (Doc. 42 at ¶¶9, 11.) However, contrary to Greeley's argument, that does not mean that JCR cannot bring an infringement claim under the works. The law also permits an exclusive licensee to bring suit for infringement of its exclusive rights. *See Dodd, Mead & Co. v. Lilienthal*, 514 F.Supp. 105, 105-06 (S.D.N.Y. 1981) (author of book granted to plaintiff "the exclusive right of printing, publishing and selling" the book, thereby permitting plaintiff to sue for infringement); *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir. 1982) ("An exclusive licensee of a right under a copyright is entitled to bring suits for infringement 'of that particular right'"); *Essex*

*Music, Inc. v. ABKCO Music & Records, Inc.,* 743 F. Supp. 237, 241 (S.D.N.Y. 1990) ("Plaintiff as an exclusive licensee has the right to institute an action for copyright infringement").

JCR is The Joint Commission's exclusive licensee to reproduce and distribute the works at issue. As alleged in the Second Amended Complaint:

> The Joint Commission is a nationally-recognized accreditation and certification program for more than 20,000 health care organizations and programs in the United States. (Doc. 42 at ¶3.) Its mission is to improve health care for the public by, among other things, evaluating health care organizations and inspiring them to excel in providing safe and effective care of the highest quality and value. (*Id*.)
>
> JCR has the exclusive right from The Joint Commission to carry out The Joint Commission's education, publication, and accreditation preparation functions, as they pertain to improving patient safety and quality of care in the health care environment. (*Id*. at ¶4.)
>
> JCR has the right, from The Joint Commission, to (among other things) copy, sell, distribute, and publish materials owned by The Joint Commission (*Id*.), which includes the two works at issue (*Id*. at ¶¶9, 11).[1]

These allegations establish that JCR has the exclusive license from The Joint Commission to reproduce and distribute the two works at issue. Reproduction and distribution are two of the rights conferred by copyright law. *See* 17 U.S.C. §106(1) and (3). As The Joint Commission's exclusive licensee under those rights, JCR can sue to enforce them.[2]

---

[1] The relationship between the two Plaintiffs extends beyond exclusive licensor-exclusive license: The Joint Commission is the sole Member of JCR (Doc. 42 at ¶5); The Joint Commission wholly controls JCR (*Id*.); both have the same principal place of business (*Id*. at ¶¶3-4); and both are Illinois not-for-profit corporations (*Id*.).

[2] The Joint Commission also has rights conferred by the copyright law, including the right to prepare derivative works, to perform the works, and to display the works. *See* 17 U.S.C. §106(2), (4), and (5). Accordingly, The Joint Commission can also maintain this infringement suit.

### III. THE JOINT COMMISSION'S COPYRIGHT APPLICATION IS LEGALLY SUFFICIENT TO SUPPORT PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIM

Greeley raises the same argument that Fortis raises in its motion to dismiss (Doc. 45): that this Court should follow the "registration approach" rather than the "application approach." Plaintiffs here incorporate by reference their opposition to Fortis' motion.[3]

### IV. PLAINTIFFS' ALLEGATIONS STATE A CLAIM FOR COPYRIGHT INFRINGEMENT

#### A. Plaintiffs' Second Amended Complaint Identifies the Infringing Works

Paragraph 17 of Plaintiffs' Second Amended Complaint (Doc. 42) specifically lists, by title and edition, six publications that infringe Plaintiffs' copyrights:

    a.    *Chapter Leader's Guide to Provision of Care* (2012 ed.);

    b.    *Chapter Leader's Guide to Infection Control* (2012 ed.);

    c.    *Chapter Leader's Guide to Information Management* (2012 ed.);

    d.    *Chapter Leader's Guide to Life Safety* (2013 ed.);

    e.    *Chapter Leader's Guide to Human Resources* (2012 ed.); and

    f.    *Verify and Comply: Credentialing and Medical Staff Standards Crosswalk*, Sixth Edition.

Nevertheless, Greeley complains that the Second Amended Complaint "do[es] not clearly allege which of Defendants' works are at issue in this case." (Doc. 46 at 7.) The argument is based on the preface to ¶ 17, which reads: "For example, and without limitation". From there, Greeley

---

[3] Greeley's motion raises several alleged deficiencies with Plaintiffs' Second Amended Complaint that Fortis does not raise in its motion to dismiss. Because Greeley cannot seek relief for Fortis, Plaintiffs address Greeley's arguments only insofar as they pertain to Greeley.

apparently suggests that Plaintiffs are secretly withholding from Greeley a large "universe of potentially infringing works." (Doc. 46 at 8.)

Plaintiffs are not. Although there may be additional infringing materials that Greeley has reproduced and published, Plaintiffs are currently unaware of any beyond those listed in ¶17a-f. That is the universe to date and ¶17 gives Greeley specific notice of the infringing publications.

The standard litigation process protects Greeley if, after Plaintiffs take discovery, Plaintiffs learn that Greeley's copying extends to publications in addition to those already identified. Greeley will presumably issue discovery requests asking Plaintiffs to identify all allegedly infringing publications. As Plaintiffs learn additional facts through discovery, they will answer Greeley's requests and, when appropriate, supplement their answers in accordance the Federal Rules of Civil Procedure. But Greeley's position that it does not currently know which of its publications Plaintiffs currently allege to infringe is incorrect; Greeley knows everything that Plaintiffs know (and Greeley most likely knows far more).

Neither case Greeley relies on supports its argument. In *Nat'l Bus. Dev. Services, Inc. v. Am. Credit Educ. and Consulting, Inc.*, 299 Fed.Appx. 509 (6th Cir. 2008), the complaint did not "identify any specific works by defendants that infringe on plaintiff's copyright." *Id*. at 511. Here, Plaintiffs have identified six specific infringing works by title and edition. Likewise inapplicable is *Palmer Kane LLC v. Scholastic Corp.*, 2013 WL 709276 (S.D.N.Y. Feb. 27, 2013). There, the complaint did not specify which of *the plaintiff's protected works* defendant was alleged to infringe. *Id*. at *3. The case does not support Greeley's argument that every infringing publication *of the defendant* must be specifically identified at the pleading stage to survive a motion to dismiss.

Greeley also complains that Plaintiffs' allegations do not identify which of Greeley's actions, as oppose to which actions of Fortis, give rise to Plaintiffs' infringement claims. First, as Greeley well knows, Plaintiffs have made numerous requests of Greeley (and of Fortis) over several months for information and documents that might explain the legal and commercial relationship between the two Defendants. Plaintiffs have made their requests in written correspondence to the Defendants' attorneys and, with regard to Fortis, through the normal discovery process under the Federal Rules. The most relevant document appears to be an Asset Purchase Agreement between HCPro, Inc. (which was Greeley's former corporate name) and Fortis that explains which Defendant owns what assets and what liabilities. To date, neither Greeley nor Fortis has complied with Plaintiffs' requests for a copy that Agreement. If Greeley wants Plaintiffs to identify which of the publications Plaintiffs believe Greeley is legally responsible for, Greeley could and should have produced the Agreement to Plaintiffs.

But regardless of Greeley's unwillingness to produce the Agreement, Greeley certainly knows which of the six publications at issue it is responsible for, either under the law and/or under the Agreement with Fortis. For example, if Greeley has reproduced or distributed the 2012 edition of the *Chapter Leader's Guide to Provision of Care* (Doc. 42 at ¶17a), or if the Asset Purchase Agreement makes Greeley responsible for liabilities associated with that publication, then Greeley is liable under the allegations of the Second Amended Complaint. Greeley can undertake the same analysis with respect to the five other publications that Plaintiffs have specifically identified in ¶17.

### B. Plaintiffs' Second Amended Complaint Alleges Access

Greeley next argues that Plaintiffs fail to allege that Greeley "had the opportunity to copy the Plaintiff Publications – otherwise known as 'access.'" (Doc. 46 at 9.) First, access is not required to state a claim for copyright infringement. Copyright infringement requires "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiffs have alleged both elements. (Doc. 42 at ¶¶ 9-13 and 17.) An allegation of access is not required.[4]

But even if an allegation of access were required, Plaintiffs have alleged it. Twice. In ¶ 23 of the Second Amended Complaint, Plaintiffs allege that "Defendants had access to the Works [*i.e.*, to the Plaintiff Publications] before engaging in their unlawful acts." And in ¶17 of the Second Amended Complaint, Plaintiffs allege that each of the six publications that Defendants have reproduced and distributed "includes text that has been copied from" the Plaintiff Publications. An allegation of copying necessarily includes an allegation of access. "After all, copying … clearly requires that the defendant had access to – indeed, have relied upon – the plaintiff's work in creating the new one." *Stillman v. Leo Burnett Company, Inc.*, 720 F.Supp. 1353, 1206 (N.D. Ill. 1989).

Greeley necessarily recognizes these allegations but says that the Second Amended Complaint must go further, to allege "how or when" Greeley had access to the Plaintiff Publications. (Doc. 46 at 9.) Only such allegations, Greeley says, are enough. But such details are not required to state a claim for copyright infringement.

---

[4] Neither case on which Greeley relies – *Hobbs v. Johns*, 722 F.3d 1089 (7th Cir. 2013), nor *Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F.Supp.2d 920 (N.D. Ill. 2013) – holds that a copyright plaintiff must allege access to state a claim for copyright infringement.

In *Frerck v. Pearson Educ. Inc.*, 2012 WL 1280771 (N.D. Ill. Apr. 16, 2012), the defendant moved to dismiss the plaintiff's complaint for copyright infringement because it lacked "specific details as to each infringing act." *Id*. at *3. The Court denied, the motion, explaining that such a requirement:

> would impose a higher burden on copyright claims than is required under the federal rules. Notice pleading, not fact pleading, is all that is required to survive a motion to dismiss under Rule 12(b)(6). "As *Erickson* underscored, 'specific facts are not necessary'" to survive a motion to dismiss. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). "Instead, the Court has called for more careful attention to be given to several key questions: what, exactly, does it take to give the opposing party 'fair notice'; how much detail realistically can be given, and should be given, about the nature and basis or grounds of the claim; and in what way is the pleader expected to signal the type of litigation that is being put before the court?" *Id*. Frerck's complaint sufficiently puts Pearson on notice of the nature of his claims and states a plausible basis for relief. It also provides a clear path toward resolving the claims — however burdensome discovery may be, Frerck's complaint clearly identifies the issues and alerts Pearson and the Court to the information that must be obtained to resolve his claims. The complaint satisfies Fed.R.Civ.P. 8(a)(2) [which makes "a short and plain statement of the claim showing that the pleader is entitled to relief" sufficient under the Rules].

*Frerck*, 2012 WL 1280771, *3.

Neither *Twombly* and *Iqbal* supports Greeley's argument. In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court explained that its holding "do[es] not require heightened fact pleading of specifics." 550 U.S. 544, 569 (2007). The "how or when" that Greeley demands are precisely such specifics. Under *Ashcroft v. Iqbal*, a claim is sufficient "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009). Plaintiffs allege that Defendants' reproduction and distribution of six specifically-identified publications (Doc. 42 at ¶¶16-17) infringe Plaintiffs' copyrights in two specifically-identified works (*Id*. at ¶9-13), and that such reproduction and distribution has been undertaken without Plaintiffs' authorization or permission

(*Id.* at ¶15.) Plaintiffs' further include a chart that lists page numbers of the Defendants' infringing publications and correlates them to Plaintiffs' copyrighted works. (*Id*. at ¶¶18-19.) Plaintiffs' allegations meet, and exceed, what is required by *Iqbal*.

Greeley's reliance on *Best v. AT&T Mobility, LLC*, 2015 WL 1125539 (S.D. Ohio 2015), is distinguishable on a bright-line basis: the plaintiff in *Best* was unable to allege that the defendant had copied the plaintiff's work, even after being given leave of court to amend the complaint on that very issue. Instead, the plaintiff could allege only that the defendant was liable for copyright infringement allegedly committed by others. *Id*. at *3. Plaintiffs here, however, have expressly alleged direct copying by Greeley. *See* Doc. 42 at ¶17. There is no parallel between the case before the Court and *Best v. AT&T Mobility*.

   **C.**  **There is No Authority Supporting Greeley's Request for a Merits-Based Ruling Based Only on the Examples of Greeley's Copying Provided in the Second Amended Complaint**

With only the allegations of the Second Amendment Complaint of record, Greeley asks the Court to freeze the record, to skip the entire discovery process, and to find that the *examples* of Greeley's infringement provided in the Complaint prohibit Plaintiff from relying on other instances of Greeley's infringement in two of the six publications at issue, insofar as they relate to the *2011 CAMH, Update 2*.[5] And then, Greeley asks the Court to find that, as a matter of law, the examples are neither quantitatively nor qualitatively sufficient to constitute actionable infringement.

There is no legal support for Greeley's request. As discussed earlier, Plaintiffs are not required to provide in their Second Amended Complaint an exhaustive list of each instance of

---

[5] Greeley provides copies of the two infringing publications at Doc. 44-2.

Greeley's copying. Greeley's request, however, is based on the opposite premise; specifically, that the *examples* of Greeley's copying set forth in ¶19 of the Second Amended Complaint are really *the universe* of Greeley's copying. That premise conveniently disregards Plaintiffs' express allegations to the contrary and is contrary to the Federal Rules, which require only notice pleading and which Plaintiffs have met.

In the typical case, Defendants charged with infringement take discovery from the plaintiff on details surrounding the infringement (such as "how" and "when"). Assuming Greeley does so here, Plaintiffs will respond in accordance with their discovery obligations under the Federal Rules. For example, additional instances of Greeley's infringement can be found in Appendix 8 of Greeley's HR Guide, which copies *verbatim* almost eight full pages from Plaintiffs' *2009 CAMH, Update 2*. (*See* Doc. 42-3, Pages 98 through 105, *compared with* Doc. 44-2, Pages 132 through 143.)[6] The only text that Greeley has not copied are some "Notes" in Plaintiffs' work but otherwise, Greeley's Appendix 8 directly copies from Plaintiffs' work.

Similarly, Greeley's Infection Control Guide copies *verbatim* or closely paraphrases (which is also actionable) numerous pages from Plaintiffs' *2009 CAMH, Update 2*. (*See* Doc. 42-3, Pages 110-118 and 286-292, *compared with* Doc. 44-1, Pages 22, 24, 27-29, 36, 42, 46, 49-52, 91-94, and 103-109.)

These additional instances demonstrate, again without limitation, Greeley's pervasive and systematic copying of Plaintiffs' work. But Plaintiffs are not required at the pleading stage to detail each instance in which Greeley has copied Plaintiffs' works. And therefore, Greeley cannot use the Second Amended Complaint as the full record of Greeley's copying.

---

[6] The page numbers refer to the Court's electronic stamp at the top of each document.

Neither case that Greeley relies upon found that that the nature or extent of defendant's copying could be evaluated *at the pleading stage*. Instead, each court issued its ruling on a motion for summary judgment, after the parties took discovery from one another. *See Newton v. Diamond*, 388 F.3d 1189, 1194 (9th Cir. 2004) (court considered, among other things, testimony of experts); *Louisiana Contractors Exam Services, Inc. v. American Contractors Exam Services, Inc.*, 13 F.Supp.3d 547, 550 (M.D. La. 2014) (discovery had closed).

Nor does this case fit within the Court's decision in *Personal Keepsakes, Inc. v. Personalizatinmall.com, Inc.*, 975 F.Supp.2d 920 (2013). The plaintiff there specified that the defendant's infringement consisted of a single phrase. *Id*. at 924. There is no indication that the plaintiff asserted there to be other instances of infringement. Here, however, Plaintiffs' infringement is, by the express allegations of the Second Amended Complaint, *not* limited to the examples provided. Moreover, the Court in *Personal Keepsakes* found that the plaintiff's asserted phrase ("May the strength of the Holy Spirit be with you, guiding you every day of your life") was too common and unoriginal to qualify for copyright protection. *Id*. at 925. Greeley makes no such argument here.

## V. CONCLUSION AND RELIEF SOUGHT

For the reasons set forth above, the Court should deny Greeley's motion and order Greeley to answer Plaintiffs' Second Amended Complaint within 14 days of the Court's decision.

In the event, however, the Court finds that any of the allegations of Plaintiffs' Second Amended Complaint require supplementation, Plaintiffs request leave of Court to amend their Second Amended Complaint accordingly. *See*, *e.g.*, *Hard Drive Productions, Inc. v. Does 1-55*, 100 USPQ 1539, 1543 (N.D. Ill. 2011); *Meredith v Chicago Tribune Company, LLC*, 2014 WL

87518, at *4 (N.D. Ill. Jan. 9, 2014); *Asius Techs., LLC v. Sonion US, Inc.*, 835 F.Supp.2d 554, 563 (N.D. Ill. 2011).

                Respectfully submitted,

                */s/ John Gabrielides*_____
                John T. Gabrielides (IL Bar No. 6198323)
                Nicholas G. de la Torre (IL Bar No. 6269612)
                Jeffrey Catalano (IL Bar No. 6289197)
                Michael R. Friedman (IL Bar No. 6312846)
                BRINKS GILSON & LIONE
                NBC Tower--Suite 3600
                455 North Cityfront Plaza Drive
                Chicago, Illinois 60611-5599
                (312) 321-4200

                Attorneys for Plaintiffs

**Certificate of Service**

I hereby certify that on August 10, 2015, I served a copy of:

**PLAINTIFFS' OPPOSITION TO GREELEY COMPANY, INC.'S
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

on counsel of record pursuant to the Court's Electronic Case Filing ("ECF") system.

                */s/ John Gabrielides*_____
                John Gabrielides
                Counsel for Plaintiffs