IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE JOINT COMMISSION ON ACCREDITATION OF HEALTHCARE ORGANIZATIONS and JOINT COMMISSION RESOURCES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE GREELEY COMPANY, INC. and FORTIS BUSINESS MEDIA LLC d/b/a BLR – BUSINESS & LEGAL RESOURCES, <br><br> Defendants. | No. 14 C 10225 <br><br> Judge John J. Tharp, Jr. |

**MEMORANDUM OPINION AND ORDER**

The plaintiffs, the Joint Commission on Accreditation of Healthcare Organizations ("the Joint Commission") and Joint Commission Resources, Inc. ("JCR"), bring suit against the defendants, the Greeley Company, Inc. ("Greeley") and Fortis Business Media LLC ("Fortis"), alleging copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 106, 501. The defendants have moved to dismiss. *See* Mts. Dismiss, ECF Nos. 44, 45. For the following reasons, the motions to dismiss are granted.

**BACKGROUND**[1]

The Joint Commission is a not-for-profit corporation that provides accreditation and certification services for more than 20,000 health care organizations and programs in the United States. Sec. Am. Compl. ("SAC") ¶ 3, ECF No. 42. JCR is also a not-for-profit corporation in the

---

[1] As this is a motion to dismiss, the Court accepts all well-pleaded facts as true and construes all inferences in favor of the plaintiff. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 634 (7th Cir. 2012).

health care accreditation industry; the Joint Commission is the sole member of JCR and wholly controls JCR. SAC ¶¶ 4-5. JCR has the "excusive [sic] right to carry out the Joint Commission's education, publication, and accreditation preparation functions, as they pertain to improving patient safety and quality of care in the health care environment" and "has the right, from The Joint Commission, to (among other things) copy, sell, distribute, and publish materials owned by The Joint Commission." SAC ¶ 4. The Joint Commission licenses its copyrighted works to third parties who pay licensing fees to exercise some or all of the rights it owns, including reproduction, distribution, public performance and display of the works, and preparation of derivative works. SAC ¶ 6.

In 2009, the Joint Commission authored a publication entitled "2009 Comprehensive Accreditation Manual for Hospitals, Update 2" ("2009 CAMH"). SAC ¶ 9. On June 3, 2015, the Joint Commission filed an application to register the copyright in the 2009 CAMH with the U.S. Copyright Office. SAC ¶ 10, Ex. B. As far as the Court is aware, this copyright application currently remains pending. In 2011, the Joint Commission authored a publication entitled "2011 Comprehensive Accreditation Manual for Hospitals" ("2011 CAMH"). SAC ¶ 11. On November 8, 2011, the U.S. Copyright Office issued Copyright Registration No. TX 7-528-407 to the Joint Commission for the 2011 CAMH. SAC ¶ 12, Ex. D. On June 15, 2015, the Joint Commission filed a supplementary registration form with the U.S. Copyright Office for Copyright Registration No. TX 7-528-407; the supplementary registration seeks to change the author and copyright claimant from "Joint Commission" and "Joint Commission Resources," respectively,

to "Joint Commission on Accreditation of Healthcare Organizations" for both. SAC ¶ 13, Ex. E. As far as the Court is aware, the supplemental registration is also still pending.[2]

The Joint Commission has licensed the 2009 and 2011 CAMHs to third parties who pay licensing fees for the right to reproduce, distribute, publicly perform and/or display the works, and prepare derivative works. SAC ¶ 14. Neither Greeley nor Fortis have ever had any license, authorization, permission, or consent from the plaintiffs to reproduce, distribute, publicly perform and/or display the works, or prepare derivative works. SAC ¶ 15. The plaintiffs allege that the defendants have published text that has been "copied from, is substantially similar to, and/or is derivative of" the 2009 and 2011 CAMHs. SAC ¶ 17. The plaintiffs allege that the defendants' infringing publications include "[f]or example and without limitation, . . . *Chapter Leader's Guide to Provision of Care* (2012 ed.); *Chapter Leader's Guide to Infection Control* (2012 ed.); *Chapter Leader's Guide to Information Management* (2012 ed.); *Chapter Leader's Guide to Life Safety* (2013 ed.); *Chapter Leader's Guide to Human Resources* (2012 ed.); and *Verify and Comply: Credentialing and Medical Staff Standards Crosswalk*, Sixth Edition." SAC ¶ 17.

The SAC includes two charts of examples "without limitation" of the comparative pages in the 2009 and 2011 CAMHs and the allegedly infringing pages in the defendants' publications.

---

[2] There is no indication the supplemental registration has been accepted and that the corrected registration has been issued. *See* United States Copyright Office, *Circular 8: Supplementary Copyright Registration*, 2 (Apr. 2013), http://copyright.gov/circs/circ08.pdf ("When a supplementary registration is completed, the Copyright Office will assign it a new registration number, usually in the same class and series as the basic registration, and issue a certificate of supplementary registration under that number."); *see also Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008) ("We may take judicial notice of documents in the public record . . . without converting a motion to dismiss into a motion for summary judgment."); *United States ex rel. Dingle v. Bioport Corp.*, 270 F. Supp. 2d 968, 973 (W.D. Mich. 2003) (court may take judicial notice of "public records and government documents available from reliable sources on the Internet").

*See* SAC ¶¶ 18-19. For example, the plaintiffs allege that page 83 of the defendants' Infection Control Guide infringes on page NPSG-17 of the 2011 CAMH and that page 124 of the Human Resources Guide infringes on page HR-6 of the 2011 CAMH.[3] *See* SAC ¶ 19.

The plaintiffs filed suit on December 19, 2014 against HCPro, Inc.[4] and Fortis, alleging infringement of their publication, "2013 Comprehensive Accreditation Manual for Hospitals." Compl. ¶ 9, ECF No. 1. The plaintiffs filed a First Amended Complaint in May 2015, naming Greeley as a defendant instead of HCPro, Inc. *See* First Am. Compl., ECF No. 23. In June 2015, the plaintiffs filed the Second Amended Complaint against Greeley and Fortis, this time substituting the 2009 and 2011 CAMHs for the 2013 CAMH as the works that the defendants have allegedly infringed. Fortis filed a partial motion to dismiss, seeking dismissal of the claims based on the 2009 CAMH, and Greeley filed a motion to dismiss the entire SAC for failure to state a claim.

## DISCUSSION

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. *See Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Adams*, 742 F.3d at 728 (quoting *Ashcroft v.*

---

[3] The text of these pages is included *infra* at 9, 11-13.

[4] While the relationship between Greely and HCPro, Inc. is not entirely clear from the parties' filings, it appears that Greeley formerly did business as HCPro, Inc. and that it sold some or all of the assets of HCPro, Inc. to Fortis at some point prior to November 4, 2013. *See* Greeley Mem. in Supp. 2 n.4, ECF No. 46; Resp. to Greeley 6, ECF No 51.

4

*Iqbal*, 556 U.S. 662, 678 (2009)). Although notice pleading under Rule 8 is a more lenient standard than the code pleading that preceded it, "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. A court must accept all of the plaintiff's factual allegations as true when reviewing the complaint, but conclusory allegations merely restating the elements of a cause of action do not receive this presumption: "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. "A complaint must allege facts to support a cause of action's basic elements; the plaintiff is required to do at least that much." *Adams*, 742 F.3d at 728.

To state a claim for copyright infringement, a plaintiff must plausibly allege that (1) the plaintiff owns a valid copyright; and (2) the defendant copied "constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361 (1991). However, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). The Seventh Circuit has held that compliance with the registration requirement in § 411(a) "is not a condition of copyright protection but is a prerequisite to suing for infringement." *Brooks-Ngwenya v. Indianapolis Pub. Sch.*, 564 F.3d 804, 806 (7th Cir. 2009); *see also Reed Elsevier v. Muchnick*, 559 U.S. 154, 166-169 (section 411(a)'s registration requirement "does not restrict a federal court's subject-matter jurisdiction," but rather is a "precondition to filing suit," an element of a copyright infringement claim).

The parties make much of the open question in this Circuit whether merely applying for copyright registration satisfies § 411(a)'s registration requirement (the "application approach") or whether the Copyright Office must have acted on the registration prior to the filing of the suit

5

(the "registration approach"). *See* Greeley Mem. in Supp. 6-7, ECF No. 46; Fortis Mt. Dismiss 3-8; Resp. to Fortis 1-6, ECF No. 50. *Compare Panoramic Stock Images, Ltd. v. John Wiley & Sons, Inc.*, 963 F. Supp. 2d 842, 850 (N.D. Ill. 2013) (adopting the application approach), *with TriTeq Lock & Sec. LLC v. Innovative Secured Sols., LLC*, No. 10 CV 1304, 2012 WL 394229, at *4 (N.D. Ill. Feb. 1, 2012) (endorsing the registration approach).

The Court need not weigh in on this debate, however: the plaintiffs filed suit in December 2014 but did not file an application to register the copyright in the 2009 CAMH until June 3, 2015, nearly six months after this lawsuit was instituted. *See* SAC ¶ 10, Ex. B. "A rule in the form 'no action shall be instituted until . . .' means that the condition must be fulfilled before the litigation begins. Satisfaction of the condition while the suit is pending does not avoid the need to start anew." *Brooks-Ngwenya v. Thompson*, 202 F. App'x 125, 127 (7th Cir. 2006); *see also Brooks-Ngwenya v. Indianapolis Public Schools*, 564 F.3d 804, 806 (7th Cir. 2009); *Automation By Design, Inc. v. Raybestos Prods. Co.,* 463 F.3d 749, 752 n.1 (7th Cir. 2006); *cf. McNeil v. United States,* 508 U.S. 106, 110-11 (1993) (Federal Tort Claims Act, which provides that no action may be instituted until an administrative claim has been made and resolved, requires dismissal of a suit filed before the administrative claim's resolution, even if that step occurs while the suit is pending); *Hallstrom v. Tillamook County,* 493 U.S. 20, 25-26 (1989) (statutory 60-day waiting period after giving notice to the EPA before filing suit requires outright dismissal of premature action rather than keeping it inactive on the docket for the 60-day period); *Perez v. Wisconsin Department of Corrections,* 182 F.3d 532, 534-36 (7th Cir. 1999) ("judges must place enforcement of the statute over a concern for efficient docket management" by dismissing lawsuits for failure to exhaust administrative remedies as required under 42 U.S.C. § 1997e(a)).

Thus, the plaintiff's claims based upon the 2009 CAMH must be dismissed without prejudice for failure to comply with the precondition in § 411(a).[5] *See, e.g.*, *Warrick v. Roberts*, No. 13 C 987, 2013 WL 3754918, at *1-2 (N.D. Ill. July 15, 2013) (dismissing copyright claim for noncompliance with § 411(a)'s precondition because plaintiffs did not apply for registration until after filing the lawsuit); *TriTeq Lock*, 2012 WL 394229, at *5 (dismissing plaintiff's copyright claim for failure to satisfy registration precondition where plaintiff applied for registration a year after initiating the lawsuit); *see also Salzman v. Rabineck*, No. 11-2434-EFM, 2013 WL 1776706, at *1-2 (D. Kan. Apr. 25, 2013) (citing *Brooks-Ngwenya*, 202 F. App'x at 126-27) (dismissing copyright claim where plaintiffs had not applied for registration prior to filing and directing plaintiffs to register and re-file within the statute of limitations, if possible).

## I. Plaintiff JCR's Interest in the Copyright in the 2011 CAMH

The first element of a claim for copyright infringement is ownership of a valid copyright. *See Feist Publications,* 499 U.S. at 361. Greeley argues that the SAC fails to allege that JCR is an owner of the 2011 CAMH copyright and thus, JCR's claims must be dismissed. The plaintiffs argue that although the Joint Commission is the author and owner of the 2011 CAMH,[6] JCR is an exclusive licensee and, as such, is entitled to sue for infringement.

---

[5] The Court notes that the plaintiffs, while advocating for the application over the registration approach, did not even respond to Greeley's argument that the claims based on the 2009 CAMH must be dismissed for failure to apply for copyright registration prior to filing suit. *See* Greeley Mem. in Supp. 1, 6-7 n.6; Resp. to Greeley 4, ECF No. 51; Greeley Reply 5, ECF No. 53.

[6] The original registration for the 2011 CAMH lists JCR as the author and copyright claimant. *See* SAC Ex. D. The plaintiffs have since filed a supplemental registration seeking to "correct" this registration to list the Joint Commission as the author and owner of the copyright. *See* SAC Ex. E. As noted *supra* at note 2, there is no indication that the supplemental copyright has been accepted and that the copyright registration has been updated; however, the supplemental registration is a public document expressly disavowing JCR as the owner and author of the 2011 CAMH.

7

Plaintiffs are correct that the "legal or beneficial owner of an exclusive right"—*i.e.*, an exclusive licensee—may bring suit for infringement of its interest in a copyrighted work. 17 U.S.C. § 501(b); *see HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 381-82 (7th Cir. 2011). The SAC describes JCR's rights relative to the Joint Commission: JCR has the "***excusive*** [sic] *right* to carry out the Joint Commission's education, publication, and accreditation preparation functions, as they pertain to improving patient safety and quality of care in the health care environment" and "has the ***right***, from The Joint Commission, to (among other things) copy, sell, distribute, and publish materials owned by The Joint Commission." SAC ¶ 4 (emphasis added). While JCR has an exclusive right for "education, publication, and accreditation" functions pertinent to patient safety and quality of care, that contrasts with its right, not delineated as exclusive, to "copy, sell, distribute, and publish" the Joint Commission's materials. Additional inconsistencies in the SAC further undercut the plaintiffs' exclusive licensee argument: the plaintiffs state that the "Joint Commission directly and/or indirectly licenses its copyrighted works to third parties" and that the "Joint Commission has directly and/or indirectly licensed . . . the 2011 CAMH . . . to third parties who pay licensing fees to (for example) reproduce the Work[ ], prepare derivative works based on the Work[ ], distribute copies of the Work[ ] . . . ." SAC ¶¶ 6, 14. If the Joint Commission has licensed the 2011 CAMH to third parties to reproduce and distribute the work, then JCR cannot have the exclusive license to do so.

As currently pleaded, the SAC does not plausibly allege JCR's status as an exclusive licensee, and Greeley's motion to dismiss JCR's claims is therefore granted without prejudice.

**II.     The Joint Commission's Failure to State a Claim**

The second element of a claim for copyright infringement—that the defendant copied the plaintiff's work—can be shown by direct evidence, such as an admission of copying, or may be

8

inferred "by showing that the defendant had the opportunity to copy the original (often called 'access') and that the two works are 'substantially similar,' thus permitting an inference that the defendant actually did copy the original." *Peters v. West*, 692 F.3d 629, 633 (7th Cir. 2012). Greeley argues that the plaintiffs have failed to allege that the defendants had access to the 2011 CAMH. *See* Mem. in Supp. 9 ("Plaintiffs do not allege how or when either Defendant had any opportunity to copy either of the Plaintiff Publications."). The plaintiffs argue that they do not need to show access because they have alleged direct evidence of copying. *See* Resp. to Greeley 7, 9.

The plaintiffs identify six of the defendants' publications that "include[ ] text that has been copied from, is substantially similar to, and/or is derivative of" the 2011 CAMH. SAC ¶ 17. They then include a chart containing two examples of the pages in the defendants' publications that infringe on the 2011 CAMH. SAC ¶ 19. The chart indicates that page 124 of the defendants' Human Resources Guide infringes on page HR-6 of the 2011 CAMH. The relevant text from each page is identical and reads:

> 16. **For psychiatric hospitals that use Joint Commission accreditation for deemed status purposes:** The director of psychiatric nursing is a registered nurse who has a master's degree in psychiatric or mental health nursing, or its equivalent, from a school of nursing accredited by the National League for Nursing, or is qualified by education and experience in the care of the mentally ill. The director of psychiatric nursing demonstrates competence to participate in interdisciplinary formulation of individual treatment plans; to give skilled nursing care and therapy; and to direct, monitor, and evaluate the nursing care furnished.
>
> 18. **For psychiatric hospitals that use Joint Commission accreditation for deemed status purposes:** The director of the social work department or service has a master's degree from an accredited school of social work or is qualified by education and experience in the social services needs of the mentally ill.

9

2011 CAMH HR-6, SAC Ex. C, ECF No. 42-3; Greeley Mt. Dismiss Ex. B 124, ECF No. 44-2.[7]

That the allegedly infringing page is copied verbatim from the 2011 CAMH is sufficient to plausibly allege access: although "access does not entail copying . . . copying entails access." *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1170 (7th Cir. 1997). How could an entire page of the defendants' publication be identical to the 2011 CAMH if the defendants did not have access to the work? Plainly, the defendants copied at least one page of the 2011 CAMH. That necessarily means that they had access to the document. It does not, however, necessarily mean that there is substantial similarity between the works.

The substantial similarity test is objective: the court must consider "'whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value.'" *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005) (quoting *Atari, Inc. v. North American Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982), *superseded by statute on other grounds*). This analysis encompasses a quantitative component: the violative work must infringe upon a substantial portion of the plaintiff's work.

> No easy rule of thumb can be stated as to the quantum of fragmented literal similarity permitted without crossing the line of substantial similarity. The question in each case is whether the similarity relates to matter that constitutes a substantial portion of plaintiff's work—not whether such material constitutes a substantial portion of defendant's work. Thus, for example, the fact that the sampled material is played throughout *defendants'* song cannot establish liability, if that snippet constitutes an insubstantial portion of *plaintiff's* composition.

---

[7] "It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim.'" *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).

4-13 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 13.03(A)(2)(a) (Matthew Bender ed. 2015) (emphasis in original).

Here, the plaintiffs have alleged substantial similarity, but they have not supported that legal conclusion with facts that make it plausible. *See Iqbal*, 556 U.S. at 679. The plaintiffs identify only two paragraphs in the defendants' Human Resources Guide that are copied verbatim from the plaintiffs' 742-page work. *See supra* at 9. The only other evidence of infringement is one page of the defendants' Infection Control Guide, which paraphrases one page of the 2011 CAMH. The plaintiffs' 2011 CAMH reads:

> **NPSG.07.06.01**
> Implement evidence-based practices to prevent indwelling catheter-associated urinary tract infections (CAUTI).
> **Note:** *This NPSG is not applicable to pediatric populations. Research resulting in evidence-based practices was conducted with adults, and there is no consensus that these practices apply to children.*
>
> **Elements of Performance for NPSG.07.06.01**
> **A** 1. During 2012, plan for the full implementation of this NPSG by January l, 2013.
> **Note:** *Planning may include a number of different activities, such as assigning responsibility for implementation activities, creating time lines, identifying resources, and pilot testing.*
>
> **C** 2. Insert indwelling urinary catheters according to established evidence-based guidelines that address the following:
> • Limiting use and duration to situations necessary for patient care
> • Using aseptic techniques for site preparation, equipment, and supplies
>
> **C** 3. Manage indwelling urinary catheters according to established evidence-based guidelines that address the following:
> • Securing catheters for unobstructed urine flow and drainage
> • Maintaining the sterility of the urine collection system
> • Replacing the urine collection system when required
> • Collecting urine samples

> **A** 4. Measure and monitor catheter-associated urinary tract infection prevention processes and outcomes in high-volume areas by doing the following:
> • Selecting measures using evidence-based guidelines or best practices
> • Monitoring compliance with evidence-based guidelines or best practices
> • Evaluating the effectiveness of prevention efforts

2011 CAMH NPSG-17, SAC Ex. C (emphasis in original). The allegedly infringing page of the

defendants' Infection Control Guide reads:

|  | **NPSG.07.06.01** Use evidence-based practices to prevent CAUTI. Note EPs that are similar (such as education will not be repeated), only EPs specific to the prevention of CAUTI are included. Not applicable to pediatric populations. |

| **Element of performance** | **Compliance hints** |
|---|---|
| **EP 1** Plan for full implementation by January 1, 2013. | Have an outline of the current state of your organization and the results of any pilot programs, measures, or education your facility has implemented. |
| **EP 2** Insert Foley catheters using evidence-based guidelines: Limiting use and duration to situations necessary for patient care. Using aseptic techniques for site preparation, equipment, and supplies. | What processes are in place to reinforce appropriate catheter use? Use prevalence surveys for checking appropriate use and timely removal to check that the seal is intact on the system. |
| **EP 3** Manage Foley catheters using evidence-based guidelines: Secure catheters to prevent obstructed urine flow and drainage. Maintain sterility of the system. Replacing the system when required. Appropriate collection of urine samples. | Observe practice on patient care units. |

12

| | |
|---|---|
| **EP 4** Monitor CAUTI prevention processes and outcomes in high-volume areas:<br>Use evidence-based guidelines or best practices.<br>Monitoring compliance with guidelines.<br>Evaluating the effectiveness of prevention efforts. | If an organization's risk assessment shows that risk is greatest for CAUTI in specific patient care units or service lines, the surveillance program may be targeted to focus resources on those high-risk issues. Section IV pp. 15 to 16 of the Hospital Infection Control Practices Advisory Committee guideline lists evidence-based measures that are helpful for implementing a program to monitor compliance. (Please refer to the guidelines for these specific measures.) |

Greeley Mt. Dismiss Ex. B 83 (emphasis in original).

The defendants dispute that their page is substantially similar to the page from the 2011 CAMH, but even assuming that it is, what the plaintiffs have identified as evidence of substantial similarity between their 2011 CAMH and the defendants' publications amounts to one page out of 742 pages that contains two paragraphs of identical text and one page that contains mainly paraphrased text. Those allegations fall well short of plausibly alleging substantial similarity to the plaintiffs' 2011 CAMH. Two out of 742 pages (.27%) of the 2011 CAMH have been allegedly infringed.[8] This minimal degree of duplication is not a reproduction of a substantial portion of the plaintiffs' work and the complaint, thus, fails to satisfy the plaintiffs' obligation under Rule 8 to plausibly allege infringement of their copyright in the 2011 CAMH. *See* 4-13 *Nimmer on Copyright* § 13.03(A)(2)(a) n.97-98; *see also Green Bullion Fin. Servs., LLC v. Money4Gold Holdings, Inc.*, 639 F. Supp. 2d 1356, 1362 (S.D. Fla. 2009) (defendant's three-

---

[8] That's measuring by pages. The percentage is even smaller if one measures by the number of standards and elements of performance, as the defendants do. *See* Greeley Mem. in Supp. 11 ("The referenced page of the Infection Guide contains paraphrases of one (out of 300) Standard and four (out of 1750) Elements of Performance . . . ."), 13 ("The single referenced page of the HR Guide contains recitations of two (out of 300) Elements of Performance . . . .").

page websites, even if they were similar to the plaintiff's site, were too insignificant a portion of defendant's 43-page website to be substantially similar); *Turner v. Century House Publishing Co.*, 290 N.Y.S.2d 637, 646 (N.Y. Sup. Ct. 1968) (that one chapter of plaintiff's book was paraphrased in defendant's book was not substantial similarity); *Rosemont Enters., Inc. v. Random House, Inc.*, 366 F.2d 303, 305-06 (2d Cir. 1966), *cert. denied*, 385 U.S. 1009 (1967) (court expressed "considerable doubt" whether the copied portion was "a material and substantial portion" of the plaintiff's work and reversed the grant of preliminary injunction where defendant copied verbatim approximately 31 lines (about 256 words) and paraphrased approximately eight lines (about 80 words)—a combined 2.5%—of a total of 13,500 words); *cf. Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 548, 565-66 (1985) (that 13% of defendant's article was copied verbatim from plaintiff's article was "in absolute terms . . . an insubstantial portion" but the qualitative value of the copied material was substantial).

The plaintiffs assert that they are not required to provide an exhaustive list of each example of infringement at this stage as discovery may uncover additional instances of infringement. *See* Resp. to Greeley 9-10. While that is possible,[9] it misses the point. The plaintiffs need not, in their complaint, catalog every instance of duplication between the defendants' work and the 2011 CAMH; rather, they must plead facts sufficient to make their claim of substantial similarity plausible. Sampling may permit such an inference, if done based on a methodology that supports an inference that the sample results are representative of the correlation between the works as a whole. *See Nimmer on Copyright* § 12.10(B)(3) ("[T]he court may render its decision based on representative samples of defendant's episodic work, rather

---

[9] It is unclear what additional information the plaintiffs expect to uncover in discovery; they have access to the text of their work and to the text of the defendants' publications. They are as able to compare the entirety of the works and identify any additional infringing portions now as they would be after discovery.

than being required to 'look at all 150 episodes' in reaching its determination of substantial similarity." (citing *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1132 (C.D. Cal. 2007))). Merely locating two occasions where there is substantial similarity, however, does not provide a reliable basis for such an inference.

The claims of copyright infringement based on the 2011 CAMH are dismissed without prejudice for failure to state a claim.[10]

\*   \*   \*

The SAC is dismissed without prejudice. The plaintiffs are granted leave to replead within 14 days of the entry of this Order. As noted, the claims based on the 2009 CAMH cannot be cured by repleading in this case but may be the subject of a new suit if the statute of limitations permits. The parties should consider as well whether such a suit could be consolidated with this one after filing pursuant to Local Rule 40.4. Absent timely filing of an amended complaint, the case will be dismissed with prejudice.

Dated: April 13, 2016

John J. Tharp, Jr.
United States District Judge

---

[10] Greeley also argues that the complaint must be dismissed for failure to identify each and every work that allegedly infringes on the plaintiffs' publications. *See* Greeley Mem. in Supp. 7-8. The plaintiffs are correct that they are not required to identify every infringing publication at this stage; the question is whether they have plausibly alleged infringement by the identified publications. For the reasons stated *supra*, they have not met this requirement. If the plaintiffs discover additional infringing publications at a later date, they can seek leave to amend the complaint to add those claims.